**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| AARON SLOAN, | ) | |
| Plaintiff, | ) | Civil Action No. 10-221Erie |
| | ) | |
| v. | ) | |
| | ) | District Judge McLaughlin |
| RAYMOND SOBINA, et al, | ) | |
| Defendants. | ) | Magistrate Judge Baxter |
| | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

## I.     RECOMMENDATION

It is respectfully recommended that the partial motion for summary judgment filed by Defendants [ECF No. 37] be granted in part and denied in part.  Specifically, the partial motion for summary judgment should be:

- Granted in favor of Defendants Brooks, McCormick, Sobina, Beard, Mark and Watson on the failure-to-intervene claim;

- Denied as to Defendants Vincent and Caldwell on the failure-to-intervene claim;

- Granted in favor of Defendant Franz on the false misconduct/cover-up claim;

- Granted as to all claims against Defendants Lucore, Warner, and Jouver; and

- Granted in favor of Beard, McCormick, Balos, Brooks, Sobina, Mark and Watson on both the failure-to-protect and failure-to-supervise claims against them.

The Clerk of Courts should be directed to terminate the following Defendants as parties to this action: Brooks, McCormick, Sobina, Beard, Mark, Watson, Franz, Lucore, Warner, Jouver, and Balos.

A Case Management Order is issued separately.

## II.     REPORT

### A.     Relevant History

Plaintiff, a state inmate acting *pro se*, filed this civil rights action on September 7, 2010. Plaintiff alleged that he was repeatedly assaulted at the State Correctional Institution at Albion ("SCI-Albion").  As pled in the original complaint, Plaintiff's claims arose from three distinct incidents:

>  (1) An assault by a correctional officer on June 25, 2007 ("Incident #1");

>  (2) An assault by a different correctional officer on July 6, 2007 ("Incident #2"); and

>  (3) An assault by several correctional officers on September 2, 2008 ("Incident #3").

ECF No. 4.

In response to the Complaint, Defendants filed a partial motion to dismiss arguing for dismissal of some of the claims and some of the named Defendants based upon the time bar of the statute of limitations.  ECF No. 16.  Defendants argued that all claims arising out of Incidents #1 and #2 were time-barred and that, as a result, twelve of the thirty-five named Defendants should be terminated from this action as they were only allegedly involved in those incidents. This Court agreed.   <u>See</u> ECF Nos. 22, 23.  The following time-barred Defendants were dismissed from this action: Michael J. Fries, James Morgan, V. Hanson, Joyce Coleman, Scott

Whitesell, K. Sutter, Maxine Overton, P. McKissock, R. Weaver, B. Ruth, Officer Benek, and William M. McConnell. Id.

Following a period of discovery, the remaining Commonwealth Defendants[1] filed a partial motion for summary judgment. ECF No. 37.[2] Defendant Purvis[3], a former employee of the Department of Corrections, is represented separately and has filed a motion to dismiss based upon failure of proper service. Defendant Purvis' motion to dismiss is addressed separately.

In the following discussion, Plaintiff's remaining claims are grouped together for ease of analysis.

### 1) Excessive Force/Failure to Intervene/Cover-up Claims

In his complaint, Plaintiff identifies nine Defendants (Purvis, Fies, Drake, Morales, Dilts, Nichols, Shoulders, Sissem, Walls) as having engaged in the excessive use of force (or in the failure to intervene to stop the excessive force) arising out of the incident on September 2, 2008. Plaintiff alleges that Fies, Drake, and Morales smashed him into the hallway wall and then

---

[1] The remaining Commonwealth Defendants are: Raymond Sobina, Superintendent; Marilyn Brooks, former Superintendent; the "Program Review Committee"; Steve Warner, Teresa Jouver, and Don Lucore, medical employees; Lt. Scott McCormick; Lt. Thomas Balos; Lt. Albert Caldwell; Lt. Darren Vincent; Sgt. Howard Sissem; CO Jack Walls; CO Christopher Fies; CO Raymond Drake; CO Charles Ditts; CO Richard Gunther; CO Frankie Morales; CO Mark Nichols; CO William Shoulders; Chief Hearing Examiner Timothy Mark; Secretary of Corrections Jeffrey Beard; and former Chief Grievance Officer Cindy Watson.

[2] Eight of the remaining 22 Department of Corrections Defendants are identified as having engaged in the excessive force incident against Plaintiff on September 2, 2008. They are Fies, Drake, Morales, Dilts, Nichols, Shoulders, Sissem and Walls. These Defendants are not included in the pending motion for partial summary judgment because although they "deny [they] used excessive force, there appear to be material facts in dispute so as to render the claims against these Defendants appropriate for trial." ECF No. 38, page 3.

[3] Investigations were conducted by SCI Albion and by the Department of Corrections' Office of Professional Responsibility, which determined that Defendant Purvis used improper levels of force toward plaintiff, kicking or stomping Inmate Sloan while he was on the corridor floor as reflected on a video of the incident. Purvis was suspended and later his employment was terminated. ECF No. 40-2, page 3.

slammed him to the floor.  ECF No. 4, ¶¶ 26, 28.  Plaintiff claims that while he was on the floor,

Purvis was kicking him and Shoulders assaulted him about the head and face.  Id. at ¶ 29.

Plaintiff also claims that Fies, Drake, Morales and Purvis, together with Dilts and Nichols,

rammed him into the doorway while leading him from the hall into the Intake room (id. at ¶ 31),

and then the same individuals, without Fies, rammed him into the counter and dropped him to the

floor (id. at ¶¶ 32-33).  While on the floor in Intake, Plaintiff claims that someone (either Drake,

Morales, Nichols, Shoulders, Dilts, Sissem or Walls) was kneeing his head and face and caused a

cut near his eye.  Id. at ¶ 34.  Plaintiff also claims that these nine Defendants then conspired to

cover-up the incident.  Id. at ¶ 37.

Plaintiff claims that Defendant Franz assisted in the cover-up by approving the issuance

of a false misconduct against Plaintiff.  Id. at ¶ 38.  He further claims that Defendant Dilts

changed his account of events in further of the conspiracy to cover-up the incident.  Id. at ¶ 39.

### 2)  Deliberate Indifference/Cover-up Claims

Plaintiff alleges that Nurses Warner, Lucore and Jouver "assisted in Plaintiff's subjection

to a wanton infliction of pain and the attempted cover-up of the viciousness of the attack by

inadequately treating Plaintiff's injuries and fabricating reports."  Id. at ¶ 40.

### 3)  Failure to Protect Claims

Furthermore, Plaintiff alleges that from March 1, 2007 through July 13, 2008, he made

numerous complaints to Defendants McCormick, the PRC, Balos, Brooks and Sobina about

"assaults and threats to assault Plaintiff, denial of medical attention, denial of the basic

necessities of life, and an overall unconstitutional environment existing within Albion."  Id. at ¶

42.  Additionally, from August 15, 2007 through March 7, 2008, Plaintiff "submitted numerous

forms of complaint … about the harassment, threats, abuse and unconstitutional environment … within Albion and its RHU" to Beard, Watson and Mark.  Id. at ¶ 43.

### 4) The Investigations and Report

The Commonwealth Defendants do not dispute that Plaintiff was the subject of an unplanned use of force on September 2, 2008.  ECF No. 38, page 2.  Following the incident, SCI Albion conducted a preliminary Fact Finding and Superintendent Sobina referred the matter to the Department of Corrections' Office of Professional Responsibility for further investigation. ECF No. 40-2, page 3.

The OPR investigated the incident, conducting interviews and collecting written statements from thirteen Department of Corrections employees and six inmates.  Id.  The report concluded:

> Upon reviewing the DVR footage, it seems apparent that Sergeant Purvis was kicking and stomping on inmate Sloan while he was lying face down on the ground being restrained; through the interview process it was substantiated both verbally and in written form through several staff members present, that there was excessive force used on the part of Sergeant Purvis when he responded to the intake area for an inmate refusing to lock up call.  These Staff members clearly state that they witnessed Sergeant Purvis kicking Sloan and were upset that he put their jobs at stake by involving them in such an incident.
>
> It was also stated that Sergeant Purvis attempted to continue using excessive force on inmate Sloan by attempting to ram his head into the intake desk while he was being transported to the holding cell.  Purvis allegedly was unable to [do so] due to the other escorting Officer Nichols pulling Sloan back to avoid the desk.  This unfortunately caused injury to Sloan, because this caused the inmate to be dropped onto the floor.  Upon obtaining the written and verbal statements of these staff members involved, it is evident to the interviewing Officers that excessive force/abuse was used on the part of Sergeant Purvis and it has been unquestionably substantiated by staff members who were present.
>
> During the interview, several of the responding Staff members were forthright and truthful, however, there were others interviewed that the interviewers deemed as uncredible in factually reporting the truth as it pertains to this incident. […]

Id. at pages 35-36.[4]

The investigation found that: 1) CO Purvis violated the Department of Corrections' Code of Ethics § § B.1, B.2, B.10, B.22, and B.29; 2) CO Sissem violated Department of Corrections' Code of Ethics § § B.10, B.22, B.29, and B.32; and 3) CO Fies violated Department of Corrections Procedure § § 9C(d) and 33(a)(2). ECF No. 40-5, pages 33-34.


### B. The Pending Dispositive Motion

Presently pending before this Court is the Commonwealth Defendants' motion for partial summary judgment. Defendants move for summary judgment on the following bases:

- ten Defendants cannot be held liable on the failure-to-intervene claim as they were not present at the time of the occurrence;

- Defendant Franz cannot be liable for a cover-up of the incident based upon his approval of a false misconduct against Plaintiff;

- Plaintiff has failed to exhaust his administrative remedies against the medical Defendants;

- Alternatively, the medical Defendants did not violate Plaintiff's Eighth Amendment rights by way of the medical care they provided or by falsifying medical records; and

- Seven Supervisory Defendants cannot be held liable based on their non-involvement in the events.

ECF No. 38.

Plaintiff has filed a brief in opposition to the pending motion for partial summary judgment. ECF No. 47. Although he provides a few specific arguments addressing the

_____

[4] The Report noted that Sissem, Drake, Gunther, Morales, and Shoulders were less than forthright in their statements to OPR interviewers.

reasoning of Defendants' motion, Plaintiff's opposition mainly rests upon his argument that all of the remaining Defendants conspired to cover-up the alleged excessive use of force incident.[5]

These issues are sufficiently briefed and are ripe for disposition by this Court.

### C.     Standards of Review

#### 1.  *Pro Se* Litigants

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-521(1972).  If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements.  Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Dep't of Corrections, 949 F.2d 360 (10th Cir. 1991).  Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a

---

[5]  As a general matter, § 1983 claims need not be pled with any greater particularity than any other claims. See Fed.R.Civ.P. 8.  However, conspiracy claims must be pled with sufficient particularity to provide the defendants with fair notice of the claims against them.  Loftus v. Southeastern Pa. Transp. Auth., 843 F.Supp. 981, 986 (E.D. Pa. 1994).  "While the pleading standard … is a liberal one, mere incantation of the words 'conspiracy' or 'acted in concert' does not talismanically satisfy the Rule's requirements."  Johnson v. Kafrissen, 1995 WL 355289, at *2 (E.D. Pa. 1995).  In the face of a motion for summary judgment, a successful conspiracy claim must show a "combination, agreement, or understanding among all or between any of the defendants to plot, plan, or conspire to carry out the alleged chain of events."  Tomlinson v. Borough of Norristown, 2011 WL 1539728, at * 5 (E.D. Pa. 2011) quoting Ammlung v. City of Chester, 494 F.2d 811, 814 (3d Cir. 1974).  There must be evidence of actual agreement between the parties, as "agreement is the *sin qua non* of a conspiracy."  Id. quoting Spencer v. Steinman, 968 F.Supp. 1011, 1020 (E.D. Pa. 1997).

complaint in favor of the complainant.  Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997).  See, e.g.,

Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard);

Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990)(same).


### 2.  Motion for summary judgment – Rule 56

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted

if the "movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."  The moving party has the initial burden of proving to

the district court the absence of evidence supporting the non-moving party's claims.  Celotex

Corp. v. Catrett, 477 U.S. 317, 330 (1986); Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007);

UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004).

The burden then shifts to the non-movant to come forward with specific facts showing a

genuine issue for trial. Fed. R. Civ. P. 56(e); Williams v. Borough of West Chester, Pa., 891 F.2d

458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a

scintilla but less than a preponderance - which supports each element of his claim to defeat a

properly presented motion for summary judgment).  The non-moving party must go beyond the

pleadings and show specific facts by affidavit or by information contained in the filed documents

(i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving

elements essential to his claim.  Celotex, 477 U.S. at 322.  See also Saldana v. Kmart Corp., 260

F.3d 228, 232 (3d Cir. 2001).  The non-moving party "must present more than just bare

assertions, conclusory allegations or suspicions to show the existence of a genuine issue." Garcia

v. Kimmell, 2010 WL 2089639, at * 1 (3d Cir. 2010) quoting Podobnik v. U.S. Postal Serv., 409

F.3d 584, 594 (3d Cir. 2005).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). See also El v. SEPTA, 479 F.3d 232, 238 (3d Cir. 2007).

## III. LEGAL ANALYSIS

### A. Failure-to-Intervene Claim

The Commonwealth Defendants move for summary judgment on the failure-to-intervene claim on behalf of Defendants Franz, Brooks, McCormick, Sobina, Beard, Mark, Watson, Vincent, and Caldwell.[6] Defendants argue that because the evidence demonstrates that these Defendants were not in proximity to the unfolding events, they cannot be legally responsible for their alleged failure-to-intervene to stop the use of force against Plaintiff.

The Third Circuit has noted that "the restriction on cruel and unusual punishment contained in the Eighth Amendment reaches non-intervention just as readily as it reaches the more demonstrable brutality of those who unjustifiably and excessively employ fists, boots or clubs." Smith v. Mensinger, 293 F.3d 641, 651 (3d Cir. 2002). A prison officer's failure to intervene constitutes an Eighth Amendment violation if there was reasonable opportunity for the officer to intervene and he refused to do so. Knox v. Doe, ___ F.3d ___, ___, 2012 WL 2849653, at *1 (3d Cir. July 12, 2012) quoting Smith v. Mensinger, 293 F.3d 641, 651 (3d Cir.

---

[6] Plaintiff does not allege a failure-to-intervene claim against Nurses Warner, Lucore, and Jouver.

2002) ("[A]n officer is only liable if there is a realistic and reasonable opportunity to intervene."). See also Delker v. Blaker, 2011 WL 2601962, at 5-6 (W.D. Pa.) (plaintiff must show that: 1) defendant failed to intervene when a constitutional violation took place in his presence or with his knowledge and 2) there was a realistic and reasonable opportunity to intervene). A prison guard "cannot escape liability by relying upon his inferior or non-supervisory rank vis-a-vis the other officers." Mensinger, 293 F.3d at 650. In order to state a plausible failure-to-intervene claim, the plaintiff's allegations must suggest that the defendant both saw what happened and had a reasonable opportunity to intervene. See Whitehead v. Rozum, 2011 WL 6056617, *7 (W.D. Pa). See also Baker v. Monroe Township, 50 F.3d 186, 190-191 (3d Cir. 1995) (liability exists under § 1983 when a prison guard has "knowledge of and acquiesced in other officers' constitutional violations").

Defendants have provided evidence that the following Defendants were not present during the excessive force incident: Franz, Brooks, McCormick, Sobina, Beard, Mark and Watson.

As to Defendant Franz, the evidence reflects that he was not at the scene of the incident, but was in the Captain's Office in the rear of Central Control at the time of the incident. See ECF No. 40-2, OPR report of interview with Defendant Franz, pages 26-31; ECF No. 40-3, Commonwealth Employee Witness Statement of Defendant Franz, page 19-20. In his own deposition, Plaintiff acknowledges that Defendant Franz was not at the scene of the incident. ECF No. 40-1, Plaintiff's Deposition, page 13. The record before this Court further reflects that Defendant Franz only became aware of the incident after it happened.

In opposition to this evidence, Plaintiff argues that Defendant Franz gave a statement explaining that he:

> witnessed the events that took place involving Plaintiff on September 2, 2008 during the course of the events taking place. Id. at 27. Franz gave testimony that he … witnessed the events prior to any reports – including misconduct number B046426 – being submitted to him. Id. at 58-59. Before any reports were even submitted, Franz knew something was wrong and there was a need to review the video footage of the incident. Id.

ECF No. 47, page 3. In support of this statement, Plaintiff cites to pages 27 and 58-59 of Defendants' Exhibits in Support of the partial motion for summary judgment: the pages to which Plaintiff cites are actually ECF No. 40-2, page 28, and ECF No. 40-3, pages 19-20, respectively. The first cited document is the OPR Report detailing Officer Franz's interview with OPR which does not indicate that Franz witnessed the incident, but instead indicates that Franz came out of the Control Room and looked at the camera in time to see that Sloan was restrained and Caldwell and Vincent were on the scene. ECF No. 40-2, page 28. The second document Plaintiff cites is Defendant Franz's written employee witness statement given on September 4, 2008 in which Franz described:

> I observed the end of the incident on the camera at the CCTV officer station. I observed the officers carry the inmate into the intake area and saw that Lieutenant Caldwell and Lieutenant Vincent were on scene. I was advised that inmate Sloan was secure in a holding cell and medical was contacted to assess the inmate for injuries. I returned to the captain's office to start the part 2 paperwork on the incident …

ECF No. 40-3, page 19.

Because the evidence reflects that Defendant Franz was not on the scene of the incident and did not know about its occurrence until after the fact, he cannot be liable for an Eighth Amendment violation based upon a failure-to-intervene theory. Accordingly, summary judgment should be granted in his favor.

As to Defendants Brooks, McCormick, Sobina, Beard, Mark and Watson, Plaintiff's own deposition acknowledges that these individuals were not at the scene of the incident. ECF No.

40-1, pages 19-21.  Nothing in the evidentiary record before this Court reflects that any of these named Defendants witnessed the incident or were even present at the institution.  None of these named individuals were identified or interviewed during the OPR investigation.  <u>See</u> ECF No. 40-2.  Plaintiff does not provide any evidence placing these individuals at the scene (as he must do in order to defeat a well-supported motion for summary judgment – <u>see</u> <u>Celotex</u>).  Accordingly, the motion for summary judgment should be granted in favor of Defendants Brooks, McCormick, Sobina, Beard, Mark and Watson on this claim.

As to Defendants Vincent and Caldwell, the evidence before this Court is inconclusive as to their whereabouts during the incident.  Both Vincent and Caldwell appear in the almost four-minute DVR recording of the event: Vincent enters the scene at minute 1:56, while Caldwell enters the scene at minute 2:04.  Both of which are after Plaintiff was dropped on the floor in Intake.  However, it is unclear as to their whereabouts during the most violent of the action- the recording does not rule out the possibility that Vincent and Caldwell stood by and watched just out of sight of the camera.  In his deposition, Plaintiff continues to claim that Caldwell kneed him in the head.  ECF No. 40-1, pages 11-12.  Accordingly, the motion for summary judgment should be denied as to Vincent and Caldwell on the failure-to-intervene claim.

### B.  False Misconduct and Cover-up

Next, Defendants argue for summary judgment on the claim against Defendant Franz.  In his complaint, Plaintiff alleges that Defendant Franz participated in a cover-up of the September 2nd incident by approving the filing of a false misconduct against Plaintiff.  ECF No. 4, ¶ 38.

The filing of a misconduct, even if later proven to be false, "is not a constitutional violation so long as the inmate is provided with due process."  <u>Flanagan v. Shively</u>, 783 F.Supp.

922, 931 (M.D. Pa. 1992), aff'd, 980 F.2d 722 (3d Cir. 1992). Here, the record reflects that although a misconduct was initially issued to Plaintiff, there was no hearing on the misconduct and Plaintiff was never disciplined. ECF No. 40-1, Plaintiff's Deposition, pages 17-18. The filing of an allegedly false misconduct, even if true, cannot provide the factual basis for a constitutional claim against Defendant Franz and so summary judgment should be granted in his favor on this claim.

Furthermore, the record reflects that Defendant Franz initiated the original investigation within hours of the incident. In his capacity as Shift Commander on the day of the incident, Defendant Franz received verbal reports from prison staff, and he reviewed the recording of the incident. Defendant Franz reported the incident to the Superintendent and his Deputies and received orders to gather incident reports. ECF No. 40 – listed as exhibit 2, pages 3, 25-30. Plaintiff has pointed to nothing in the evidentiary record that supports his claim that Defendant Franz was involved in a cover-up and so, summary judgment should be granted in this Defendant's favor.

### C. Claims against Nurse Defendants Lucore, Warner, and Jouver

Next, Defendants move for summary judgment on the Eighth Amendment claims against Nurses Lucore, Warner, and Jouver.

In his complaint, Plaintiff alleges that the nurses 1) provided him with inadequate medical treatment and 2) fabricated medical reports in order to cover-up the use of force against him. ECF No. 4, ¶ 40. However, according to his own deposition, the basis for Plaintiff's claim against these three medical Defendants is that they "didn't adequately document my injuries" following the incident. ECF No. 40-1, page 19. Specifically, Plaintiff clarifies that "in their

report they weren't specific. They didn't say how severe my injuries were." Id. Plaintiff describes what he believes should have been documented in his medical records: "how much blood there was," that he had "brush burns all along the side of his face," and that he was kicked in the testicles by prison staff. Id. So then, with this clarification, the claim against the three nurses is not so much about inadequate medical treatment under the Eighth Amendment as it is about the nurses' alleged participation in the conspiracy to cover-up the excessive use of force.

### 1) Failure to Exhaust

Defendants argue that Plaintiff has failed to exhaust his claims against the three nurses in violation of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), which provides that:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility until such administrative remedies as are available are exhausted.

Id.[7]

The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002); Cutter v. Wilkinson, 544 U.S. 709, 723 n.12 (2005) (noting that the PLRA requires that "a prisoner may not sue under RLUIPA without first exhausting all available administrative remedies."); Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement). Administrative exhaustion must be completed prior to the filing of an action. McCarthy v. Madigan, 503 U.S. 140, 144 (1992). The exhaustion requirement is not a technicality, rather it is federal law which federal

---

[7] It is not a plaintiff's burden to affirmatively plead exhaustion. Jones v. Bock, 549 U.S. 199, 217 (2007) ("...failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."). Instead, the failure to exhaust must be asserted and proven by the defendants. Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).

district courts are required to follow.  <u>Nyhuis v. Reno</u>, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion"). [8]

The PLRA also requires "proper exhaustion" meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules of that grievance system.  <u>Woodford v. Ngo</u>, 548 U.S. 81, 87-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ..."). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal." <u>Id.</u> at 83.[9]

"Compliance with prison grievance procedures ... is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." <u>Jones v. Bock</u>, 549 U.S. at 217-18.  <u>See also</u> <u>Spruill v. Gillis</u>, 372 F.3d 218, 231 (3d Cir. 2004) (having concluded that the PLRA includes a procedural default component, the Court then indicated that "prison grievance procedures supply the yardstick for measuring procedural default.").

---

[8] There is no "futility" exception to the administrative exhaustion requirement.  <u>Banks v. Roberts,</u> 2007 WL 3096585, at * 1 (3d Cir.) <u>citing</u> <u>Nyhuis</u>, 204 F.3d at 71 ("[Plaintiff's] argument fails under this Court's bright line rule that 'completely precludes a futility exception to the PLRA's mandatory exhaustion requirement.'").  <u>See also</u> <u>Woodford v. Ngo</u>, 548 U.S. 81, 85 (2006) ("Indeed, as we held in <u>Booth</u>, a prisoner must now exhaust administrative remedies even where the relief sought-monetary damages-cannot be granted by the administrative process.").

[9]  <u>See also</u> <u>Spruill v. Gillis</u>,  372 F.3d 218, 228-29 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion) (" Based on our earlier discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits.").

The grievance procedures in effect during the relevant time are set forth in DC–ADM 804.[10] Section VI of DC–ADM 804 details what must be included in a grievance: "The inmate will include a statement of the facts relevant to the claim.... The inmate will identify any person(s) who may have information that could be helpful in resolving the grievance." Id.

In this case, Plaintiff did not file a grievance naming the medical Defendants in any way. ECF No. 40-7, Declaration of Melinda Adams, Superintendent's Assistant, page 10. While Plaintiff did file a grievance (#242901) related to his claims of excessive use of force, the text of that grievance details only the use of force incident and does not mention medical care, conspiracy, or the nurses. ECF No. 40-7, pages 2-3.

In opposition to the motion for summary judgment, Plaintiff argues that he did not discover the alleged wrongdoing (i.e., the failure to fully document his injuries) by the medical Defendants until approximately one year after the fact (when he received documents through discovery in another federal civil rights action, Sloan v. Sobina, Civil Action No. 09-100E). Plaintiff argues that he would not have been able to file a grievance at that time because it was beyond 10 days from the date of the incident. Plaintiff is correct in that the DC-ADM requires that grievances be filed within ten days of the challenged event. Therefore, the administrative remedy process was not *available* to Plaintiff in regards to his failure to document/conspiracy claim against the nurses. See Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003) ("A grievance

---

[10] No analysis of exhaustion may be made absent an understanding of the administrative process available to state inmates. The Department of Corrections' Grievance Process requires that an initial grievance be filed within 10 days of the events alleged in the grievance. Once the inmate has complied with all of the procedural requirements and a grievance has received Initial Review, an inmate can file an appeal from this Initial Review to the Superintendent of the inmate's respective Institution. When an inmate has received a disposition of his appeal to the Superintendent, the inmate may appeal to the Secretary's Office of Inmate Grievances and Appeals and seek Final Review. In order to effectuate Final Review, an inmate must include with his paperwork the Initial Grievance, the Initial Review determination, the appeal to the Superintendent, and the Superintendent's response back to the inmate and the appeal to Final Review. DC-ADM 804.

procedure is not *available* even if one exists on paper if the defendant prison officials somehow prevent a prisoner from using it."); McKinney v. Guthrie, 2009 WL 274159, at * 1 (3d Cir. 2009) ("[A]n administrative remedy may be *unavailable* if a prisoner is prevented by prison authorities from pursuing the prison grievance process."); Berry v. Klem, 283 Fed.Appx 1, 4 (3d Cir. 2009) ("[Plaintiff] contended that the severity of his injuries prevented him from timely filing his initial grievance. [ ... and] also argued that the administrative grievance process was not available to him because he feared serious harm for filing a grievance. While that claim may not ultimately prevail, his allegations put in question the *availability* of the remedy."); Brown v. Croak, 312 F.3d 109, 113 (3d Cir. 2002) ("Assuming security officials told Brown to wait for the termination of the investigation before commencing a formal claim, and assuming the defendants never informed Brown that the investigation was completed, the formal grievance proceeding required by DC–ADM 804 was never "*available*" to Brown within the meaning of 42 U.S.C. § 1997e.") (emphasis added throughout).

However, to the extent that Plaintiff is still pursuing the claim of inadequate medical treatment pled in his complaint, administrative remedies were available to him because he would have been aware of the inadequacy of the medical treatment at the time it occurred and could have filed his initial grievance within the required time frame. Accordingly, summary judgment should be granted in favor of these Defendants on the deliberate indifference claim due to Plaintiff's failure to exhaust his administrative remedies in compliance with the PLRA.[11]

---

[11]  In the medical context, a constitutional violation under the Eighth Amendment occurs only when prison officials are deliberately indifferent to serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976). The standard is two-pronged, "[i]t requires deliberate indifference on the part of prison officials and it requires that the prisoner's medical needs be serious." West v. Keve, 571 F.2d 158, 161 (3d Cir. 1978). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Correctional Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). Such deliberate indifference can be manifested by

### 2) Failure to document/Conspiracy Claim

Next, because the grievance procedure was not available to Plaintiff when he discovered the notations in his medical records, the claim will be reviewed on the merits. In that regard, the three medical Defendants move for summary judgment based on Plaintiff's failure to state an Eighth Amendment claim against them.

Simply put, Plaintiff is not constitutionally entitled to an exact recitation in his medical file of his version of events leading up to the injury. Plaintiff has received constitutionally adequate medical attention. See footnote 11. Furthermore, Plaintiff has provided no evidence in support of his conspiracy claim against these Defendants which he must do at this stage of the litigation in order to survive summary judgment. Summary judgment should be granted in favor of Defendants Lucore, Warner, and Jouver.

### D. Failure to Protect/Failure to Supervise Claims against Secretary Beard, McCormick, Balos, Brooks, Sobina, Mark, and Watson

Next, Defendants argue for summary judgment in favor of Beard, McCormick, Balos, Brooks, Sobina, Mark, and Watson due to Plaintiff's failure to produce evidence of their personal involvement.[12]

---

an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury" White v. Napoleon, 897 F.2d 103, 109 (1990). The evidentiary record before this Court reflects that Plaintiff received medical care/treatment for his injuries following the use of force. ECF No. 40-1, pages 15, 16, and 19; ECF No. 40-3, pages 32-38.

[12] See Santiago, 629 F.3d at 130 n.8 (3d Cir.) ("Numerous courts, including this one, have expressed uncertainty as to the vitality and scope of supervisory liability after Iqbal.").

Plaintiff alleges that from March 1, 2007, through July 13, 2008, he made numerous written and verbal complaints to Defendants McCormick, the PRC, Balos, Brooks and Sobina about "assaults and threats to assault Plaintiff, denial of medical attention, denial of the basic necessities of life, and an overall unconstitutional environment existing within Albion … and requested that the necessary steps be taken to prevent them and protect the plaintiff." Id. at ¶ 42. Plaintiff claims that in response to these complaints, these Defendants "threatened the plaintiff about making complaints and allowed, condoned and assisted in wrongs committed against the plaintiff by employing manipulatory tactics, bias and arbitrary determining, and lies to allow themselves, each other and those under their command to do as they please and harass the plaintiff that led to the abuse and severe suffering inflicted upon plaintiff." Id.

Furthermore, Plaintiff alleges that from August 15, 2007 through March 7, 2008, he "submitted numerous forms of complaint … about the harassment, threats, abuse and unconstitutional environment … within Albion and its RHU" to Beard, Watson and Mark. Id. at ¶ 44. Allegedly, these Defendants responded to Plaintiff's complaints by "assist[ing] and condon[ing] … the intentional misconduct and unconstitutional environment that existed by refusing to take the stops necessary to prevent such, employing bias and arbitrary determining and manipulatory tactics, and deliberately ignoring complaints made when the Defendants had knowledge of history of misconduct by co-workers and subordinates under their command and rank." Id.

This Court liberally construes these allegations as attempting to set forth a failure to protect claim, as well as a failure to supervise claim, against these Defendants. Section 1983 liability cannot generally be predicated solely upon a theory of *respondeat superior*. Rizzo v.

Good, 243 U.S. 362 (1976).[13]   However, supervisory liability under § 1983 can be established if the plaintiff shows that the supervising official tolerated past or ongoing misbehavior from subordinate officers.  Argueta v. United States Immigration & Customs Enforcement, 643 F.3d 60, 72 (3d Cir. 2011).  A plaintiff must show that "the supervising officials personally participated in violating a person's rights, directed others to violate a person's rights, or had knowledge of and acquiesced in a subordinate's violations of a person's rights."  Simonton v. Tennis, 437 Fed.Appx 60, 64 (3d Cir. 2011) citing Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293 (3d Cir.1997).

Each theory of liability will be discussed in turn.

### 1)  Failure to Protect Theory[14]

To succeed on an Eighth Amendment claim based on a failure to protect theory, a plaintiff must show that: (1) he was incarcerated under conditions posing a substantial risk of serious harm; (2) the defendant was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists;" (3) the defendant actually drew that inference; and (4) the defendant deliberately disregarded the apparent risk.  Farmer v. Brennan, 511 U.S. 825, 834-37 (1994).  See also Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001) (the prison

---

[13]  See also Monell v. Department of Social Services, 436 U.S. 658 (1978) (superiors of line officers who act in violation of constitutional rights may not be held liable on a theory of vicarious liability merely because the superior had a right to control the line officer's action); Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986) (when a supervisory official is sued in a civil rights action, liability can only be imposed if that official played an "affirmative part" in the complained-of misconduct); Rode v. Dellarciprete, 845 F.2d 1958, 1207 (3d Cir. 1988) (the supervisor must be personally involved in the alleged misconduct).

[14] Failure-to-protect cases usually arise in the context of inmate upon inmate assaults.  See Farmer v. Brennan, 511 U.S. 825 (1994); Robinson v. Johnson, 449 Fed.Appx 205 (3d Cir. 2011).

official "must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware.").

In determining whether a prison official was deliberately indifferent, the court must "focus [on] what a defendant's mental attitude actually was (or is), rather than what it should have been (or should be)." Hamilton v. Leavy, 117 F.3d 742, 747 (3d Cir. 1997). "A prison official's knowledge of a substantial risk is a question of fact and can, of course, be proved by circumstantial evidence." Id. "In other words, it may be concluded that a prison official knew of a substantial risk from the very fact that the risk was obvious." Jones v. Day, 2007 WL 30195, at *4 (W.D. Pa. 2007). For instance:

> [I]f an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was 'longstanding, pervasive, well-documented, or expressly noted by prison officials in the past,' and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus 'must have known' about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk.

Farmer, 511 U.S. at 942-43 (internal citations omitted).

So then, in order to defeat a defendant's motion for summary judgment, "a plaintiff is obligated to produce sufficient evidence to support the inference that defendants 'knowingly and unreasonably disregarded an objectively intolerable risk of harm.' " Jones, at * 4, quoting Beers-Capitol, 256 F.3d at 132. "It is not enough to assert that a defendant should have recognized the risk; the evidence must be sufficient to support the inference that 'the defendant must have recognized the excessive risk and ignored it.'" Id. Nonetheless, Nonetheless, "Farmer made clear that a prison official defendant cannot escape liability by showing that he did not know that *this* particular inmate was in danger of attack: 'it does not matter … whether a prisoner faces an

excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk.'" Beers-Capitol, 256 F.3d at 131, quoting Farmer, 511 at 843.

Defendants argue that Plaintiff's prior complaints and grievances do not constitute sufficient notice to these Defendants. The "reports" to which Plaintiff refers in his complaint consist of two request slips dated September and October of 2007 wherein Plaintiff made general reference to "threats" by unnamed prison staff. ECF No. 4-1, pages 30-31. Additionally, Plaintiff cites to his July 2007 allegation of abuse against Office Fries (not a named Defendant in this case). Id. at page 28. However, Plaintiff's July 2007 allegation of abuse against Fries was investigated and concluded with Fries being cleared of any wrongdoing and Plaintiff being charged with Misconduct #840511. Id. at pages 1-13.

Because there is no evidence that these Defendants knowingly disregarded any risk to Plaintiff, summary judgment should be granted in their favor on this claim.


### 2) Failure to Supervise Claim

In the context of a failure-to-supervise claim, "the plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of the Eighth Amendment injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to this risk; and (4) the injury resulted from the policy or practice." Green v. Bledsoe, 2012 WL 2115491, at * 12 (M.D. Pa. March 27, 2012) quoting Beers-Capitol, 256 F.3d at 134.

In the present case, Plaintiff has failed to identify or produce evidence of a policy or practice that any of these named Defendants failed to employ. Likewise, Plaintiff has failed to

produce evidence in support of any of the four prongs of a failure-to-supervise claim.  See discussion above.

Accordingly, summary judgment should be granted on this claim.

## IV. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the partial motion for summary judgment filed by Defendants [ECF No. 37] be granted in part and denied in part. Specifically, the partial motion for summary judgment should be:

- Granted in favor of Defendants Brooks, McCormick, Sobina, Beard, Mark and Watson on the failure-to-intervene claim;

- Denied as to Defendants Vincent and Caldwell on the failure-to-intervene claim;

- Granted in favor of Defendant Franz on the false misconduct/cover-up claim;

- Granted as to all claims against Defendants Lucore, Warner, and Jouver; and

- Granted in favor of Beard, McCormick, Balos, Brooks, Sobina, Mark and Watson on both the failure-to-protect and failure-to-supervise claims against them.

The Clerk of Courts should be directed to terminate the following Defendants as parties to this action: Brooks, McCormick, Sobina, Beard, Mark, Watson, Franz, Lucore, Warner, Jouver, and Balos.

A Case Management Order will be issued separately.

In accordance with 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72, the parties must seek review by the district court by filing Objections to the Report and Recommendation within fourteen (14) days of the filing of this Report and Recommendation.  Any party opposing the

objections shall have fourteen (14) days from the date of service of Objections to respond thereto.  See Fed.R.Civ.P. 72(b)(2).  Failure to file timely objections may constitute a waiver of appellate rights.  See Brightwell v. Lehman, 637 F.3d 187, 194 n.7 (3d Cir. 2011); Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).


/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated:  July 31, 2012